UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ASHLEY RANDHAWA,

                              Plaintiff,

        v.

SOPHIA OTERO *and* MICHAEL OTERO,

                              Defendants.

No. 22-CV-10479 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Matthew Goodstein, Esq.
Pollack, Pollack, Isaac De Cicco
New York, NY
*Counsel for Plaintiff*

Kathleen Marie Mulholland, Esq.
Jyoti Mistry Halsband, Esq.
Quintarios Prieto Wood & Boyer, P.A.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Ashley Randhawa ("Plaintiff") brings this negligence Action against Sophia and Michael

Otero ("Defendants") to recover for injuries sustained in a May 16, 2022, car accident.  (*See*

*generally* Compl. (Dkt. No. 1-1).)  Before the Court is Plaintiff's Motion for Summary

Judgment, (*see* Pl's Not. of Mot. (Dkt. No. 22)), and Defendants' Cross Motion for Summary

Judgment, (*see* Defs' Not. of Mot. (Dkt. No. 24)).  For the following reasons, both Motions are

denied.

## I.  Background

### A.  Factual Background

The following facts are taken from the Parties' Local Civil Rule 56.1 statements and admissible evidence submitted in connection with their papers.  (*See* Pl's Loc. Civ. R. 56.1 Statement of Undisputed Material Facts ("Pl's 56.1") (Dkt. No. 22-2); Resp. to Pl's Statement ("Defs' 56.1") (Dkt. No. 23); Defendants' Counter Statement of Undisputed Material Facts ("Defs' Counter 56.1") (Dkt. No. 23-1); Pl's Resp. to Defs' Counter-Statement ("Pl's Counter 56.1") (Dkt. No. 26-1); Defs' Statement in Supp. of Cross Mot. ("Defs' Cross 56.1") (Dkt. No. 24-1); Pl's Resp. to Defs' Statement ("Pl's Cross 56.1") (Dkt. No. 25-1).) [1]

This Action arises out of a May 16, 2022, car accident on the Cross County Parkway in Mount Vernon, New York.  (Pl's 56.1 ¶ 1; Defs' 56.1 ¶ 1.)  At the time, Sophia Otero was operating a vehicle with the permission and consent of the vehicle's owner, Michael Otero.  (Pl's 56.1 ¶ 2; Defs' 56.1 ¶ 2.)  Although both Otero's are defendants in this Action, the Court refers primarily to Sophia Otero ("Sophia"), the driver, when discussing the relevant events.

#### 1.  The Collision

Before the accident, Sophia was driving in the left of three travel lanes and Plaintiff was in the middle lane.  (Pl's 56.1 ¶ 6; Defs' 56.1 ¶ 6.)  There was some amount of traffic, although the Parties are not consistent about how they characterize it.  Plaintiff testified that there was "heavy . . . almost bumper to bumper traffic," but that she was "driving consistently around 30

---

[1] The Parties have submitted a total of seven different Rule 56.1 statements.  (*See generally* Dkt.)  Many of these statements contain substantially similar material, especially regarding Plaintiff's alleged injuries, which makes sense given their cross motions.  For that reason, the Court does not cite each and every statement in its recitation of facts.  *See, e.g.*, *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 397 (S.D.N.Y. 2015) (disregarding "redundant" portions of Rule 56.1 statements).

miles per hour." (Pl's Not. of Mot., Ex. 5 ("Pl's Dep.") at 32:23–33:13.) For her part, Sophia stated that there was a "steady flow of traffic" yet also observed cars stopping or slowing behind her. (*Id*., Ex. 6 ("Def's Dep.") at 30:18–21; 49:2–5.)

Sophia was making a lane change to her right when the accident occurred. (Def's Dep. at 24:20–25:4.) During the maneuver, Sophia testified that she turned on her right blinker, began to slow down, and checked her rearview and right-side side mirrors. (Defs' Counter 56.1 ¶ 15; Pl's Counter 56.1 ¶ 15.) As she was merging, Sophia observed Plaintiff's vehicle slow down. (Defs' Counter 56.1 ¶ 19; Pl's Counter 56.1 ¶ 19; Def's Dep. 26: 12–19.) Sophia testified that she attempted to slow down as much as she could. (Def. Dep. 28:2–4.) But a few seconds later, the front of Defendant's car, towards the passenger side headlight, hit the rear of Plaintiff's car towards the driver's side. (Pl's 56.1 ¶ 8; Defs' 56.1 ¶ 8.)[2] The Parties agree that the roadway was in good condition and that the weather did not play a role in the collision. (Pl's 56.1 ¶ 13; Defs' 56.1 ¶ 13.)

The collision caused Plaintiff's airbags to deploy, and Sophia described the impact as "medium heavy." (Pl's 56.1 ¶¶ 10, 12; Defs' 56.1 ¶¶ 10, 12.) At the scene, Plaintiff briefly fell unconscious and later experienced dizziness and pain to her neck, back, and head. (Pl's Dep. at 45: 8–15; 46:20–25.) Plaintiff was transported to New York Presbyterian Hospital in Bronxville and released later the same day. (Defs' Counter 56.1 ¶ 24; Pl's Counter 56.1 ¶ 24.)

---

[2] "It is . . . common practice to deem a fact admitted where a party's denial is based on semantic carping as to the wording of the statement." *Galgano v. Cnty. of Putnam, N.Y.*, No. 16-CV-3572, 2024 WL 1623401, at *1 n.3 (S.D.N.Y. Apr. 15, 2024) (citing *Arch Specialty Ins. Co. v. TDL Restoration, Inc.*, No. 18-CV-6712, 2021 WL 1225447, at *1 n.1 (S.D.N.Y. Mar. 31, 2021); *see id.* at 2 n.4 (admitting a fact where the party's "denial [was] based entirely on semantic carping"). Here, Defendants deny the fact describing the nature of the collision, but their citation actually *supports* the fact in question. *Compare* Defs' 56.1 ¶ 8 ("During the lane change, the front of Ms. Otero's car, towards the passenger side headlight, hit the rear of Ms. Randhawa's car, towards the driver's side.") *with* Def's Dep. 29:5–7 ("Q: What part of [Plaintiff's] car was involved in the collision? A: The rear left driver's side."). The Court deems the fact admitted.

2.  Plaintiff's Injuries

At the hospital, Plaintiff was evaluated for head trauma and doctors examined her range of motion ("ROM").  They found the ROM in Plaintiff's cervical, thoracic, and lumbar spine to be normal.  (Defs' Counter 56.1 ¶ 26; Pl's Counter 56.1 ¶ 26; *see also* Not. of Mot., Ex. 7 ("Pl's Records") at 50.)[3]  Plaintiff was discharged without having any x-rays taken or prescriptions given.  (Defs' Counter 56.1 ¶ 27; Pl's Counter 56.1 ¶ 27.)  Her hospital after-visit summary contained a narrative recommending that Plaintiff not remain "confined in the bed" and that she take Tylenol or Motrin "as needed for pain."  (Pl's Records at 60.)

Subsequently, Plaintiff experienced a number of physical limitations.  She testified that she could not lift over 20 pounds, had difficulty kneeling and standing for over 10 minutes, and had difficulty sitting for longer than one hour due to discomfort in her lower back.  (*See* Pl's 56.1 ¶ 20; Pl's Dep. at 75–76.)

Plaintiff saw a number of different physicians to address her discomfort.  First, she presented to her primary care physician with complaints of head trauma, extreme pain to her neck and back, lack of sleep, and difficulty "engaging in her normal activities."  (Pl's 56.1 ¶ 15; Defs' 56.1 ¶ 15.)  Second, Plaintiff also saw a neurologist who prescribed her Naproxen.  (Pl's 56.1 ¶ 16; Defs' 56.1 ¶ 16; *see also* Pl's Dep at 62:9–18.)  Third, she was evaluated by a spinal surgeon for ongoing pain—although she has not undergone surgery.  (Pl's 56.1 ¶ 19; Defs' 56.1 ¶ 19; Defs' Counter 56.1 ¶ 34.)  And fourth, she sought care from Dr. Rafael Abramov at Interventional Physical Medicine & Rehabilitation.  (Pl's 56.1 ¶ 17; Defs' 56.1 ¶ 17.)

---

[3] The cited exhibit contains several medical records including the expert reports of Plaintiff's treating physician, Dr. Rafael Abramov, in addition to Plaintiff's hospital records produced in discovery.  The Court refers to them collectively as "Plaintiff's Medical Records" or "Pl's Records."

The record contains several of Dr. Abramov's treatment reports.  Relevant here are six reports dated June 13, 2022, August 15, 2022, August 22, 2022, October 3, 2022, November 7, 2022, and October 3, 2023.  (Pl's Records at 10–19.)  Those reports recounted Plaintiff's physical limitations and found that she was "temporarily totally disabled" or "100% disabled," through at least October 3, 2022.  (*Id.* at13, 16, 19.)  Each report also referenced ROM tests, conducted with the aid of a goniometer.  The tests consistently revealed ROM limitations in Plaintiff's cervical and lumbar spine, including several deficits of over 20%—a percentage computed by comparing a patient's range of motion in degrees to a normal value.  (*See, e.g.*, Pl's Records at 10 (noting a 20-degree lumbar flexion deficit (22%), and a 20-degree cervical extension deficit (33%).)  The August 15 report also references an MRI which revealed "multi-level disc bulges" in Plaintiff's spine.  (*Id.* at 15.)

Plaintiff was also examined by Defendant's expert physician Dr. Ronald Mann on October 6, 2023.  (*See* Defs' Cross Mot., Ex. 10 ("Mann Report").)  Dr. Mann reviewed the medical records discussed above, (*id.* at 2), and conducted a ROM test.  Like Dr. Abramov, he measured certain ROM deficits, including 55% limitations to cervical flexion and extension. (*See id.* at 3.)  However, several values remained within a "normal" range.  (*Id.*)  Dr. Mann diagnosed Plaintiff with cervical and thoracic "sprain/strain[s]," stated that she had a "fair" prognosis, and that she had "no disability" at that time.  (*See id.*)  Other than these reports, the Parties provide neither affidavits nor testimony from Drs. Abramov and Mann characterizing their findings.

The Parties dispute the extent to which these limitations prevented Plaintiff from working.  Prior to the accident, Plaintiff had a job working with special needs children at the Elizabeth Seton Children's Center.  (*See* Pl's 56.1 ¶ 24; Defs' 56.1 ¶ 24.)  Plaintiff testified that

she resigned from that position because Elizabeth Seton refused to accommodate her physical limitations. (*See* Pl's Dep. at 81:12–82:9.) In Plaintiff's telling, she had to be able to lift "50 pounds or more without any restrictions" to return to work—a requirement that was inconsistent with her inability to lift more than 20 pounds. (*See id*.)[4]

Because these particular limitations only appear in Plaintiff's testimony, Defendants contend that they were self-imposed. (*See, e.g.*, Defs' 56.1 ¶ 21.) Defendants point out that Plaintiff started working as a cashier "a couple of months" after the accident. (Defs' Counter 56.1 ¶ 29 (citing Pl's Dep. at 7:18–8:2).) And Defendants also cite a return-to-work letter from Plaintiff's primary care provider stating she "[m]ay return to work/school" on May 23, 2022— roughly a week after the accident. (*See* Pl's Records at 47; Pl's Dep. at 14:10–15 (stating a medical professional at "Westmed"—the author of the letter—was her primary care provider).)

B. Procedural History

Plaintiff filed a pre-motion letter in anticipation of her Motion on January 4, 2024. (Dkt. No. 17.) After Defendants responded, (Dkt. No. 18), the Court held a pre-motion conference and adopted a briefing schedule for the Parties' cross motions, (*see* Dkt. (minute entry for Jan. 17, 2024)).

Plaintiff filed her Motion on February 22, 2024. (*See* Pl's Not. of Mot.; Pl's 56.1; Supp. Mem. of Law ("Pl's Mem.") (Dkt. No. 22-1)). Defendants filed their Opposition and Cross Motion for Partial Summary Judgment on March 28, 2024. (*See* First Mem. of Law in Opp. ("Defs' Mem.") (Dkt. No. 23-2); Defs' 56.1; Defs' Not. of Mot.; Supp. Mem. of Law ("Defs' Cross Mem.") (Dkt. No. 24-11); Defs' Cross 56.1.) Plaintiff filed her Reply and Cross Opposition on April 24, 2024. (Decl. of Matthew D. Goodstein, Esq., Ex. 1 ("Pl's Reply") (Dkt.

---

[4] Plaintiff cites only her testimony in support of this account. (*See* Pl's 56.1 ¶ 24.) Her papers do not reference documentation from Elizabeth Seton to corroborate this requirement.

No. 25-1); Pl's Counter. 56.1; Mem. of Law in Opp. to Defs' Cross Mot. ("Pl's Cross Mem.")

(Dk. No. 25-1).)  Defendants filed their Reply on May 9, 2024.  (Reply Mem. of Law ("Defs'

Reply") (Dkt. No. 27).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same) (quoting Fed. R. Civ. P. 56(a)).  "In deciding whether to award summary judgment,

the court must construe the record evidence in the light most favorable to the non-moving party

and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk Cnty., New York*, 17 F.4th

342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).

"It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v.*

*1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive*

*Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020)

(same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it

ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the non[-]movant's claim," in which case "the non[-]moving party must

come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order

to avoid summary judgment."  *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d

114, 123 (2d Cir. 2013) (alteration adopted) (internal quotation marks and citation omitted); *see*

*also U.S. Bank Nat'l Ass'n as Tr. for Reg. Holders of J.P. Morgan Chase Com. Mortg. Sec.*

*Corp., Multifamily Mortg. Pass-Through Certificates, Series 2017-SB42 v. 160 Palisades Realty*

*Partners LLC*, No. 20-CV-8089, 2022 WL 743928, at *3 (S.D.N.Y. Mar. 10, 2022) (same).

Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more

than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward

with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692

F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 586–87 (1986)); *see also Jennifer Fung-Schwartz, D.P.M, LLC v.

Cerner Corp.*, No. 17-CV-233, 2023 WL 6646385, at *3 (S.D.N.Y. Oct. 12, 2023), "and cannot

rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v.

Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks and citation

omitted); *see also Kollias v. Univ. of Rochester*, No. 18-CV-6566, 2023 WL 5608868, at *4

(W.D.N.Y. Aug. 30, 2023) ("When a motion for summary judgment is properly supported by

documents or other evidentiary materials, the party opposing summary judgment may not merely

rest on the allegations or denials of his pleading." (quoting *Wright v. Goord*, 554 F.3d 255, 266

(2d Cir. 2009))).

 "On a motion for summary judgment, a fact is material if it might affect the outcome of

the suit under the governing law." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at

*12 (S.D.N.Y. Sept. 29, 2023) (quoting *Royal Crown Day Care LLC v. Dep't of Health &

Mental Hygiene of City of New York*, 746 F.3d 538, 544 (2d Cir. 2014)). "At this stage, 'the role

of the court is not to resolve disputed issues of fact but to assess whether there are any factual

issues to be tried.'" *U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2023 WL 6386956,

at *8 (S.D.N.Y. Sept. 28, 2023) (alteration adopted) (quoting *Brod v. Omya*, 653 F.3d 156, 164

(2d Cir. 2011)). Therefore, "a court's goal should be 'to isolate and dispose of factually

unsupported claims.'" *Id.* (quoting *Geneva Pharms. Tech. Corp. v. Barr Lab'ys. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986))).

When ruling on a motion for summary judgment, a district court should "consider only evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL 6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998)). "Where a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *Mozzochi v. Town of Glastonbury*, No. 21-CV-1159, 2023 WL 3303947, at *3 (D. Conn. May 8, 2023) (quoting Fed. R. Civ. P.56(c)(4)); *see also DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (same); *E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *11 (S.D.N.Y. Sept. 28, 2023) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ." (internal citation omitted)); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal quotation marks and citation omitted)).

"[A]s a general rule, 'district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage.'" *Martinez v. Pao's Cleaning, Inc.*, No. 16-CV-6939, 2018 WL 6303829, at *2 (E.D.N.Y. Dec. 3, 2018) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005)). However, although witness credibility is usually a question of fact for the jury, *Yu Zhang v. Sabrina USA Inc.*, No. 18-CV-12332, 2021 WL 1198932, at *3

(S.D.N.Y. Mar. 30, 2021), "[b]road, conclusory attacks on the credibility of a witness without more [are] insufficient to raise a genuine issue of material fact that would defeat a motion for summary judgment," *Sec. & Exch. Comm'n v. Airborne Wireless Network*, No. 21-CV-1772, 2023 WL 5938527, at *6 (S.D.N.Y. Sept. 12, 2023) (internal quotation marks and citation omitted); *see also Ezuma v. City Univ. of N.Y.*, 665 F. Supp. 2d 116, 128 (E.D.N.Y. 2009) ("If the moving party has made a properly supported motion for summary judgment, the plaintiff may not respond simply with general attacks upon the defendant's credibility." (alterations omitted) (internal quotation marks and citation omitted)).  As such, "when opposing a motion for summary judgment, the non-moving party may not respond simply with general attacks upon the declarant's credibility, but rather must identify affirmative evidence from which a jury could find that the non-moving party has carried its burden of proof." *Moritz v. Town of Warwick*, No. 15-CV-5424, 2017 WL 4785462, at *8 (S.D.N.Y. Oct. 19, 2017) (alterations adopted) (internal quotation marks and citation omitted); *see also Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 181 (E.D.N.Y. 2015) ("'Although credibility assessments are improper on a motion for summary judgment,' a court may be justified in dismissing a claim when the 'plaintiff's version of the events is in such discord with the record evidence as to be wholly fanciful.'" (quoting *Pulliam v. Lilly*, No. 07-CV-1243, 2010 WL 935383, at *5 (E.D.N.Y. Mar. 11, 2010))).

  B.  Analysis

  Plaintiff moves for summary judgement on the issues of liability and "threshold"—i.e. whether her injuries meet the threshold for a "serious injury" as defined by New York Insurance Law § 5102(d).  (*See* Pl's Mem. 8–12.)  The Court addresses each issue, including Defendants' cross motion regarding serious injury, in turn.

1. Liability

New York law regarding rear-end collisions is straightforward: "a rear-end collision establishes a prima facie case of liability against the rear vehicle and imposes a duty of explanation on the operator of that vehicle." *Munoz v. 640, LLC*, No. 19-CV-5751, 2021 WL 1176168, at *1 (E.D.N.Y. Mar. 29, 2021) (quoting *Krynski v. Chase*, 707 F. Supp. 2d 318, 322 (E.D.N.Y. 2009)). "This presumption arises both from common law principles and from New York Vehicle and Traffic Law," both of which establish that an approaching driver must maintain a reasonably safe rate of speed and exercise reasonable care to avoid a collision. *See Schultz v. Chen*, No. 17-CV-8917, 2018 WL 1413075, at *2 (S.D.N.Y. Mar. 20, 2018) (citing N.Y. Veh. & Traf. Law § 1129(a)); *see also De La Cruz v. Ock Wee Leong*, 791 N.Y.S.2d 102, 102 (App. Div. 2005) ("[A]ny rear-end collision establishes a prima facie case of negligence on the part of the rear-ending driver." (citation omitted)). A defendant may overcome this presumption by "providing a non-negligent explanation for the collision, such as a mechanical failure, unavoidable skidding on wet pavement, or a sudden stop of the vehicle ahead." *Schultz*, 2018 WL 1413075, at *2 (internal quotation marks and citation omitted) (quoting *Krynski*, 707 F. Supp. 2d at 322, then *Power v. Hupart*, 688 N.Y.S.2d 194, 195 (App. Div. 1999)). But if the defendant-operator "cannot come forward with any evidence" of such an explanation, "the plaintiff may properly be awarded judgment as a matter of law." *Astorga v. Allstate Oil Recovery, Co.*, No. 16-CV-5068, 2018 WL 1441377, at *2 (S.D.N.Y. Mar. 22, 2018) (quoting *Krynski*, 707 F. Supp. 2d at 323).

In this case, the Parties agree that a rear-end collision occurred and therefore that a presumption of negligence applies. (*See* Pl's 56.1 ¶¶ 9–11; Defs' 56.1 ¶¶ 9–11.) But Defendants respond that Plaintiff shares the blame because she slowed without warning. (Defs' Mem. 5–6.)

Courts have generally held that sudden stops or slow-downs may rebut the presumption of

negligence, but only if they were "unexpected." *See Astorga*, 2018 WL 1441377, at *2

(collecting cases) (citing *Niemiec v. Jones*, 654 N.Y.S.2d 163, 165 (App. Div. 1997) ("Where a

defendant contends that the vehicle in front of him came to an unexplained sudden stop,

questions of fact are raised that should be submitted to the jury.")); *see also Ehrenreich v. Black*,

994 F. Supp. 2d 284, 289 (E.D.N.Y. 2014) (explaining that "the front driver also has a duty not

to stop suddenly or slow down without proper signaling so as to avoid a collision" (quotation

marks omitted)). By contrast, "vehicle stops which are foreseeable under the prevailing traffic

conditions, even if sudden and frequent, must be anticipated by the driver who follows."

*Quintanilla v. Mark*, 177 N.Y.S.3d 687, 689 (App. Div. 2022) (internal quotation marks omitted)

(quoting *Grier-Key v. Lyons*, 145 N.Y.S.3d 819, 819 (App. Div. 2021)); *see also Arslan v.*

*Costello*, 84 N.Y.S.3d 229, 231 (App. Div. 2018) (same).[5]

   To give just a few common examples: sudden stops are routinely held foreseeable in

"heavy traffic" or where there is a visible lane closure or other obstruction ahead. *See Torres v.*

---

[5] Plaintiff takes issue with Defendants' statement that "plaintiff is comparatively
negligent." (Defs' Mem. 5–6.) Plaintiff argues that any comparative fault argument should be
stricken either because (a) it is not a legal defense to liability, (*see* Pl's Reply 3), or (b) there is
no genuine issue of fact, (Pl's Mem. 13). Defendants' language admittedly lacks precision, but it
need not be stricken. Plaintiff is of course correct that comparative negligence is not a defense to
liability, as the Court of Appeals has clearly held. *See Rodriguez v. City of New York*, 101
N.E.3d 366, 373 (N.Y. 2018). Yet, the caselaw provides that a plaintiff's unexplained stop—
regardless of what it says about the plaintiff—may rebut a presumption of a *defendant* driver's
negligence. *See, e.g.*, *Astorga*, 2018 WL 1441377, at *2. In other words, the circumstances
giving rise to a plaintiff's negligence may also be relevant to a *defendant's* culpability to the
extent they demonstrate that the defendant acted reasonably. Accordingly, the Court may
properly consider Defendants' argument as they expressly offer Plaintiff's slow-down as "a
non[-]negligent explanation for the collision." (*See* Defs' Mem. 6.) The following pages
address whether there is a genuine issue of fact as to Sophia's negligence.
   The Court notes that Defendants do not press their personal jurisdiction affirmative
defense, (*see* Pl's Mem. 13), in their papers, (*see generally* Defs' Mem.; Defs' Cross Mem.).

*Mamadou*, No. 19-CV-6973, 2021 WL 3682906, at *4–5 (S.D.N.Y. Aug. 19, 2021) (collecting cases); *see also Hong v. Maher*, No. 02-CV-7825, 2004 WL 771127, at *3 (S.D.N.Y. Apr. 13, 2004) (holding that a stop was foreseeable because there were "two stopped cars ahead of the [plaintiff's] vehicle"). Unexpected or *un*foreseeable slowdowns may be entirely "needless," *see Hong*, 2004 WL 771127, at *3, result from unobservable "road conditions," *Ortiz v. Rosner*, 817 F. Supp. 348, 351 (S.D.N.Y. 1993), or may follow from unanticipated events like a deer jumping into the road, *see Forget v. Smith*, 835 N.Y.S.2d 490, 492 (App. Div. 2007).

The foreseeability of Plaintiff's slowdown is at best disputed. In Sophia's version of events, traffic was moving "at a steady speed" in all lanes when she started to merge, (Def's Dep. at 26:20–25; 31:6–8), and there were no visible obstructions ahead, (*see id*. at 31: 9–12). Nevertheless, Plaintiff "slowed down almost to a stop" in just "a few seconds" without warning. (*Id*. at 27:5–10, 28:5–8.) Plaintiff's testimony differs but does not entirely detract from that account. While Plaintiff claims that there was "almost bumper to bumper traffic," Plaintiff testified that she was traveling at a "consistent[]" "30 miles per hour" prior to the accident. (Pl's Dep. at 33:3–13.) Even in a vacuum, that statement does not establish the sort of "stop-and-go" conditions that make a collision foreseeable as a matter of law. *See, e.g., Hong*, 2004 WL 771127, at *3. And Plaintiff likewise does not point to any conditions farther up the road that caused her to slow down. Drawing all reasonable inferences from that testimony in Defendants' favor, a reasonable jury could easily conclude that Plaintiff's slowdown was sudden, unexplained, and unforeseeable.

Plaintiff asserts that the evidence requires a different conclusion but engages none of this testimony in detail. (*See* Pl's Reply 3–5.) The only other part of the record she points to is Sophia's inability to recall whether Plaintiff's "br[ake] lights were illuminated prior to the

collision." (Pl's Mem. 5.) That testimony, however, does not relate to the foreseeability of

Plaintiff's slowdown. And any chance Plaintiff did not signal when she slowed tends to help

Defendants at this stage. What matters, in any event, is that Defendants put forward some

evidence of a non-negligent explanation for the collision, which suffices to defeat summary

judgment. *See Astorga*, 2018 WL 1441377, at *2; *see also Torres*, 2021 WL 3682906, at *5

(denying summary judgment where there was a dispute about whether the plaintiff "suddenly

stopped" and whether the defendant "might not have been expected to anticipate the stop");

*Munoz v. 640, LLC*, No. 19-CV-5751, 2021 WL 1176168, at *2 (E.D.N.Y. Mar. 29, 2021)

(denying summary judgment where parties' diverging stories created a material fact dispute

about whether the defendant "maintained a safe distance behind [the] plaintiffs' vehicle and did

not expect a sudden stop"); *Rosa v. Colonial Transit, Inc*., 715 N.Y.S.2d 426, 427 (App. Div.

2000) (affirming denial of summary judgment where "a triable issue of fact exist[ed] as to

whether the driver of the stopped bus . . . contributed to the accident by making a sudden stop").

2. Serious Injury

The Court next takes up the Parties' Motions regarding "serious injury."

"Under New York's Insurance Law, there is no right of recovery in tort unless a covered

person sustained a 'serious injury[.]'" *Yong Qin Luo v. Mikel*, 625 F.3d 772, 776 (2d Cir. 2010)

(quoting N.Y. Ins. Law § 5102(d)); *see also Hernandez v. Leichliter*, No. 14-CV-5500, 2016 WL

676455, at *1 (S.D.N.Y. Feb. 17, 2016) ("[A] party may only sue to recover damages for injuries

caused by a car accident in cases of serious injury." (internal quotation marks omitted)). The

purpose of this limitation is "to weed out frivolous claims and limit recovery to significant

injuries." *Flores v. Bergtraum*, No. 20-CV-1240, 2022 WL 125372, at *7 (S.D.N.Y. Jan. 13,

2022) (quotation marks omitted); *accord Bewry v. Colonial Freight Sys*., No. 01-CV-5634, 2002

WL 31834434, *2 (S.D.N.Y. Dec. 17, 2002); *see also Licari v. Elliott*, 441 N.E.2d 1088, 1091

14

(N.Y. 1982) ("By enacting the No-Fault Law, the Legislature modified the common-law rights of persons injured in automobile accidents." (citation omitted)).

The relevant provision—also called the "no fault statute"—identifies nine types of "serious injuries" for which one can sue:

> (1) "significant disfigurement"; (2) a "permanent loss of use of a body organ, member, function, or system"; (3) a "permanent consequential limitation of use of a body organ or member"; (4) a "significant limitation of use of a body function or system"; (5) "a medically determined injury or impairment of a non-permanent nature, which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" (the "90/180" category); (6) "death"; (7) "dismemberment"; (8) "fracture"; and (9) the "loss of a fetus."

*Ruffin v. Rana*, No. 11-CV-5406, 2013 WL 4834368, at *7 (S.D.N.Y. Sept. 4, 2013) (quoting N.Y. Ins. Law § 5102(d)); *see also Flores*, 2022 WL 125372, at *8 (same).

Plaintiff asserts claims under the fourth and fifth categories, (Pl's Mem. 9–13), so the Court focuses on those types of serious injuries. Importantly, the New York Court of Appeals has combined the third and fourth type of injury category as a matter of statutory interpretation. *See, e.g.*, *Toure*, 774 N.E.2d at 1201; *Gaddy v. Eyler*, 591 N.E.2d 1176, 1177 (N.Y. 1992) (evaluating a plaintiff's evidence under both the "permanent consequential limitation" and "significant limitation" prongs simultaneously). For this reason, the Court refers to these types of injuries as the "permanent" injuries, as compared to the "short-term" injury of the 90/180 category.

With respect to permanent injuries, the Court of Appeals has "held that '[w]hether a limitation of use or function is "significant" or "consequential" (i.e., important) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part.'" *Toure*, 774 N.E.2d at 1201 (alteration omitted) (quoting *Dufel v. Green*, 647 N.E.2d 105, 107 (N.Y. 1995)).

Relevant here, a claim of serious injury may be substantiated by "an expert's designation of a numeric percentage of a plaintiff's loss of range of motion." *Id*. at 1200 (citation omitted). "While there is no set percentage for determining whether a limitation in range of motion is sufficient to establish 'serious injury,' the cases have generally found that a limitation of [20%] or more is significant for summary judgment purposes." *Hodder v. United States*, 328 F. Supp. 2d 335, 356 (E.D.N.Y. 2004) (collecting cases); *see also Young Sung Lee v. Garvey*, 718 F. App'x 11, 15 (2d Cir. 2017) (summary order) (citing *Hodder* approvingly when concluding that a 10% limitation in range of motion does not rise to the level of a "serious injury" under Section 5102(d)).

The short-term injury category asks whether the accident caused an injury that "prevent[ed] the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities" for 90 of 180 days following the accident. N.Y. Ins. Law § 5102(d). "The term 'substantially all' 'should be construed to mean that the person has been curtailed from performing his usual activities to a great extent rather than some slight curtailment.'" *Sanchez v. Travelers Cos.*, 658 F. Supp. 2d 499, 508 (W.D.N.Y. 2009) (emphasis omitted) (quoting *Licari*, 441 N.E.2d at 1091).

Notably, "New York courts have frequently held that there is no 'serious injury' under the 90/180 category as a matter of law, and thus that summary judgment for a defendant is appropriate, if a plaintiff returns to work within 90 days of a car accident." *Hernandez*, 2016 WL 676455, at *2 (collecting cases). But that is not "necessarily" the case. *Sanchez*, 658 F. Supp.2d at 509 ("While an injured party's diminished ability to perform the actual tasks comprising his or her regular employment may, in some circumstances, indicate that there has been no substantial curtailment of activity, the mere fact that [the] plaintiff was able to return to

work in some capacity is not necessarily fatal to her claim of serious injury." (quoting *Vasquez v. Weiss*, 650 N.Y.S.2d 60, 61 (App. Div. 1996))); *Thomas by Thomas v. Drake*, 535 N.Y.S.2d 229, 231 (App. Div. 1988) ("The mere fact that plaintiff returned to school does not foreclose the issue as to whether his activities remained substantially impaired.").  Indeed, New York courts have denied a defendant's summary judgment motion under the short-term injury category where a plaintiff returned to work "because of economic necessity." *Sole v. Kurnik*, 500 N.Y.S.2d 872, 873 (App. Div. 1986); *see also Baez v. Goldman*, 690 N.Y.S.2d 815, 816 (App. Div. 1999); *Vazquez*, 650 N.Y.S.2d at 61.  The impact of a return to work must instead be determined based on the totality and nature of the admissible evidence put forward.  *See, e.g.*, *Labeef v. Baitsell*, 960 N.Y.S.2d 809, 810 (App. Div. 2013) (discarding inadmissible evidence and relying solely on admissible medical evidence put forward by the plaintiff to determine whether the plaintiff adequately rebutted the defendant's arguments).

Because the Parties have filed cross motions regarding injury, the Court must "determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." *AFS/IBEX v. AEGIS Managing Agency Ltd*., 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021) (citing *Morales v. Quintel Entm't, Inc*., 249 F.3d 115, 121 (2d Cir. 2001)).  Even if both Parties "*assert* the absence of any genuine issues of material fact, 'a district court is not required to grant judgment as a matter of law for one side or the other.'"  *Id*. (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).  Courts instead "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schmelczer v. Penn Credit Corp*., No. 20-CV-2380, 2022 WL 862254, at *5 (S.D.N.Y. Mar. 23, 2022) (alteration and internal quotation marks omitted) (quoting *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010)); *accord Hotel Emps. &*

*Rest. Emps. Union v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002).

a. Permanent Injury

The Court denies both cross motions regarding Plaintiff's permanent injury claim. Simply put, both sides make prima facie showings, meaning the rest must be left to a jury.

Start with Plaintiff's Motion.  In support of her prima facie case, Plaintiff presents five sworn treatment reports with some objective medical evidence of a "significant injury."  (*See* Pl's Records at 20–23 (May 23, 2022); *id*. at 18–19 (June 13, 2022); *id*. at 15–17 (August 15, 2022); *id*. at 12–13 (October 3, 2022); *id*. at 10–11 (November 7, 2022).)  Dr. Abramov recorded ROM limitations in excess of 20%—a figure that has generally been held to support prima facie case.  For instance, he consistently reported a 40% loss of lumbar flexion and a 25–30% loss in cervical rotation—both of which are indicative of "serious injury."  *See, e.g.*, *Tenzen v. Hirschfeld*, No. 10-CV-50, 2011 WL 6034462, at *7 (E.D.N.Y. Dec. 5, 2011) (stating that "[w]hile there is no set percentage" for "a limitation in range of motion [] sufficient to establish serious injury," cases generally find that "a limitation of twenty percent or more is significant for summary judgment purposes") (quotation marks omitted).  Those figures are corroborated by Defendants' expert, Dr. Mann, who found cervical spine ROM deficits of 25-55% when he examined Plaintiff in October 2023.  (*See* Pl's Not. of Mot., Ex. 8 ("Mann Rpt.") at 3 (Dkt. No. 22-8).)  And those results are further confirmed by an MRI which revealed "multi-level disc bulges" in Plaintiff's spine.  (Pl's Records at 15.)  Taken together, this evidence is sufficient to make out a prima facie "significant injury."  *See, e.g.*, *Tenzen*, No. 10-CV-50, 2011 WL 6034462, at *7 (E.D.N.Y. Dec. 5, 2011) ("It has been consistently held that a measure of

limitation, together with an MRI or other formal objective test, is sufficient to [satisfy a plaintiff's prima facie showing]" (quotation marks omitted)).[6]

Defendants, however, put up enough evidence in response to raise a triable issue of fact. They first reference emergency room records indicating Plaintiff felt no pain to her back or extremities immediately after the accident and that she showed a normal range of motion in her cervical and lumbar spine. (*See* Defs' Cross Mem., Ex. E at 1–3.) Next, Defendants point to reports from more recent examinations indicating her prognosis improved. Although Dr. Mann recorded some ROM limitations above 20%, he opined that Plaintiff had a "fair" prognosis, that her extremities were "intact," and that she had "no disability at [that] time." (*See* Mann Rpt. at 2–4.) Moreover, he diagnosed Plaintiff with cervical and lumbar "sprain/strain," which courts regularly hold to be a step short of serious injury. *See Boyarski v. Karczewski*, No. 17-CV-6282 FPG, 2019 WL 3816560, at *4 (W.D.N.Y. Aug. 14, 2019) ("Various cases have held that sprains and strains are insufficient to establish serious injury." (alteration adopted) (quotation marks omitted)); *see also Ciappetta v. Snyder*, No. 15-CV-4427, 2021 WL 536131, at *9 (E.D.N.Y. Jan. 22, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 512462 (E.D.N.Y. Feb. 11, 2021). To the extent ROM limitations are a deciding factor, there appears to be some inconsistency in Plaintiff's ROM results, as just four days before Dr. Mann examined Plaintiff, Dr. Abramov found no limitations above 20%. (*See* Pl's Records at 1.) That evidence,

---

[6] Courts have occasionally raised concerns about the reliability of ROM tests, particularly where a patient, rather than a doctor, "is asked to move the body part at issue . . . and indicate when further movement become[s] restricted or painful." *See Catania v. United States*, No. 14-CV-553, 2017 WL 6317158, at *17 (W.D.N.Y. Dec. 11, 2017) (collecting cases and quoting *Hodder*, 328 F.Supp.2d at 355), *report and recommendation adopted*, 2018 WL 1471400 (W.D.N.Y. Mar. 26, 2018). All the ROM tests at issue here relied on objective measurement tools which at least reduce the risk that a patient can subjectively influence the test. *See id.* (explaining that courts usually require "objective range of motion tests").

even if less ample than Plaintiff's, is sufficient to create a dispute of fact.  *See Gomes v. Reilly*, No. 11-CV-1005, 2013 WL 5533050, at *6 (E.D.N.Y. Sept. 30, 2013) (finding defendant satisfied prima facie case where "emergency room records" indicated the plaintiff suffered no injury and prognosis later improved).

Accordingly, because both sides can establish a prima facie case as to this theory of serious injury, their respective motions fail.  Indeed, despite each side's strident tone, they do not respond to each other's objective evidence.  Defendants effectively concede that the ROM results are prima facie significant and offers only assertions—inappropriate for summary judgment— about how to weigh that evidence.  (*See* Defs.' Mem. 9 ("any deficits in ranges of motion . . . are insignificant when weighed against the fact that . . . Plaintiff was neurologically intact . . . .").  And Plaintiff does not address the emergency room records or Dr. Mann's findings regarding her prognosis.  (*See generally* Pl's Reply.)  Those oversights or, perhaps, tacit acknowledgements, underscore why "[t]his issue is best left for a jury."  *Comba v. United States*, 535 F. Supp. 3d 97, 110 (E.D.N.Y. 2021) (denying summary judgment on a "significant limitation" theory of injury where parties offered competing objective medical evidence (citing *Kim v. Stewart*, No. 18-CV-2500, 2021 WL 1105564, at *7 (S.D.N.Y. Mar. 23, 2021) ("Contradicting medical affirmations submitted in connection with this motion merely establishes a battle of the experts which underscores the conclusion that plaintiff has presented sufficient evidence to raise a genuine issue of material fact." (alterations adopted) (quotation marks omitted))); *see also Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) ("[C]hoices between conflicting versions of events are matters for the jury, not for the court on summary judgment.").

### b.  Short-term Injury

The Court also denies both motions regarding Plaintiff's short-term injury claim.  Here, no Party has met the prima facie burden.

Plaintiff relies on a few arguments to establish a prima facie short-term injury.  First, Dr. Abramov's reports reflect that, from the date of the accident through at least October 3, 2022—a period of 140 days—Plaintiff faced a "100% disabil[ity]" or was "temporarily totally disabled."disability."  (*See, e.g.*, Pl's Records at 13, 16.)  In connection with that opinion, Dr. Abramov reiterated Plaintiff's statements that she struggled "with neck motion, bending, lifting, carrying, and performing . . . activities of daily living."  (*See, e.g.*, id. at 12.)  Plaintiff expands on those limitations in her deposition, explaining that she faced significant pain when she tried to kneel down and that it was difficult to stand for more than 10 minutes.  (Pl's Dep. at 76:6–11.)  Plaintiff also states that she was unable to "return to her pre-collision occupation as a teacher's aide."  (Pl's Mem. 10.)  According to her deposition, the Elizabeth Seton center required her to return to work without any restrictions and refused to accommodate her purported inability to lift more than 15 pounds.  (Pl's Dep. at 82:2–9, 84:2–15.)  Accordingly, Plaintiff's evidence suggests that her activities were restricted to *some* extent for more than 90 days.

But Plaintiff falls short of demonstrating that she could not perform "substantially all" of her regular activities for the requisite period.  Instead of presenting evidence that "she was *prevented* from performing any daily activities," Plaintiff relies on relies on "an oblique reference" to limitations on "activities of daily living," which courts have found to be "too nebulous" to grant summary judgment.  *Comba*, 535 F. Supp. at 111 (emphasis in original).  Plaintiff's cited cases reinforce this deficiency, as they all reference the inability to perform specific routine activities, as opposed to performing those activities with difficulties or modifications.  *See, e.g.*, *Gleissner v. LoPresti*, 521 N.Y.S.2d 735, 736 (App. Div. 1987) (evidence established that the plaintiff "could not maintain her daily routine because she was not able to do housework, which, prior to the accident, she accomplished without help, could not

continue her part-time job until some five months after the accident, could not attend church, and could not engage in family activities"); *see also Williams v. Omera*, 593 N.Y.S.2d 821, 821 (App. Div. 1993) (medical affidavit stated plaintiff was "restricted to bedrest" for four months). Plaintiff's testimony regarding her inability to return to work is similarly insufficient. Courts typically look for objective evidence of an inability to work, rather than self-imposed limitations. And Plaintiff does not provide "any documentation from h[er] employer," *Oh v. Trujillo-Montoya*, No. 21-CV-1042, 2024 WL 1282417, at *14 (E.D.N.Y. Mar. 25, 2024), or any "notes to her employer indicating that she could not return to work," *Bass v. Hout*, No. 13-CV-8516, 2019 WL 6527944, at *5 (S.D.N.Y. Dec. 4, 2019). Moreover, any favorable inference from Plaintiff's testimony is belied by her statement that she returned to work at a different job "a couple of months after" the accident, (Defs' Counter 56.1 ¶ 29 (citing Pl's Dep. at 7:18–8:2))—a fact which typically "weighs heavily against establishing a short-term serious injury" *Oh*, 2024 WL 1282417, at *13.

　　Switching motions, Defendants similarly fail to establish, prima facie, that Plaintiff did *not* suffer a 90/180 injury. Their position largely relies on the same evidence discussed above. Defendants cite deposition testimony indicating restrictions on Plaintiff's activity were self-imposed, rather than imposed by her doctor. (*See* Defs' Mem. 7 (citing Pl's Dep. at 91:20–25 ("I completely restricted myself from doing any of that [work] activity, my body was unable to")).) They note that those restrictions did not cover "substantially all" of her daily activities as Plaintiff could still "do chores around the house," even if it was not how she "normally would," (*see* Defs' Cross Mem. 5 (citing Pl's Dep. at 77:7–25).) They also point out that Plaintiff was nominally cleared to return to work on May 23, 2022, (*see* Defs' Not. of Mot., Ex. F (Dkt. No. 24-8)), and that she did in fact return to work in a different capacity within a couple of months.

But this showing is likewise insufficient.  While Defendants "may rely on [] unsworn reports by [P]laintiff's physicians" in addition to Plaintiff's testimony—as Defendants do here—they "must [also] provide evidence from [their] own physicians in the form of sworn affidavits." *See Oh*, 2024 WL 1282417, at *7.  Here, Dr. Mann entirely failed to address the 180-day period after the collision; he only opined that Plaintiff had "no disability at this time" when he examined Plaintiff over a year later in October 2023.  (*See* Mann Rpt. at 3.)  Because Defendants do not provide any affidavit or testimony from Dr. Mann expanding on that opinion, they have failed to provide the required medical evidence in support of their Motion.  *See Daane v. Ryder Truck Rental, Inc*., No. 18-CV-10489, 2022 WL 392906, at *3 (S.D.N.Y. Feb. 9, 2022) ("Defendants' experts 'failed to address the 180-day period after the collision at all in their expert reports, and therefore the defendants have failed to make their prima facie case on this point.'" (alterations adopted) (quoting *Bass v. Hout*, No. 13-CV-8516, 2019 WL 6527944, at *5 (S.D.N.Y. Dec. 4, 2019))); *see also Sanchez v. Travelers Cos., Inc.*, 658 F. Supp. 2d 499, 511–12 (W.D.N.Y. 2009) (finding defendant did not satisfy prima facie case where defendant's expert did not dispute plaintiff's objective medical evidence); *cf. Horton v. Warden*, 819 N.Y.S.2d 356, 357 (App. Div. 2006) (finding defendant's prima facie showing failed because the defendant did not "submit[] competent medical evidence demonstrating the existence of a triable issue of fact").

## III.  Conclusion

For the foregoing reasons, both Motions for Summary Judgment are denied.  The Court will hold a status conference on October 9, 2024, at 10:30 AM.  The Clerk of Court is respectfully directed to terminate the pending Motions.  (Dkt. Nos. 22, 24.)

SO ORDERED.

Dated:    September 11, 2024
          White Plains, New York

_____
        KENNETH M. KARAS
      United States District Judge